IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

FILED
UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

04 NOV 12 PM 3:45

CLERK-ALBUQUERQUE

ANNE P. KASPAR, individually and on behalf of all those similarly situated,

Plaintiff,

v.

No. CIV-04-1290 RHS DJS

MORGAN STANLEY DW, INC., a foreign corporation

Defendant.

**CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES FOR SEX DISCRIMINATION IN EMPLOYMENT**

**Parties and Jurisdiction**

1. Plaintiff Anne P. Kaspar, an individual, is domiciled in Santa Fe County, New Mexico, and the claims sued upon arose in this District.

2. Defendant Morgan Stanley DW, Inc. ("MSDW") is a foreign corporation with its principal place of business in New York and it is engaged in the business of providing investment banking and a range of financial services throughout the United States and around the world. MSDW is qualified to do business in New Mexico, has operations in New Mexico and employed Kaspar in New Mexico.

3. Kaspar filed a timely charge of employment discrimination with EEOC, received a right to sue letter and has filed this complaint within

ninety (90) days of her receipt of the right to sue letter. All procedural prerequisites to suit have been satisfied.

5. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-1 *et seq.* and pendent jurisdiction. Venue is proper in this district.

**FACTS COMMON TO ALL COUNTS**

6. Kaspar is a seasoned professional businesswoman with 23 years of business experience, 17 years of financial services experience and 14 years of direct financial advisory experience.

7. In approximately August 2003 MSDW hired Kaspar to work as a financial advisor in its Individual Investors Division in a retail brokerage office in Santa Fe, New Mexico.

8. Despite the fact that Kaspar had many years of successful service as a financial advisor with another major broker dealer prior to joining MSDW, MSDW required Kaspar to submit to a three-year training regimen, something it did not require of other new hires with her level of experience. MSDW also established Kaspar's compensation at an abnormally low level considering her industry experience and, on information and belief, male new hires with no prior experience were given the same or similar level of compensation.

9. Kaspar successfully executed the training program provided by MSDW, successfully performing more than 70 assignments over an eight

month period. She also passed all industry-required licensing examinations, scoring in the top 15% nationally, and designed and began executing an aggressive marketing program to secure clients for MSDW.

10. Despite the fact that Kaspar was fully licensed by mid-December of 2003, MSDW unduly restricted Kaspar in the performance of her financial advisor duties, by restricting her ability to solicit and sign up clients or to profit from business she was in the process of bringing into the firm.

11. MSDW informed Kaspar that the restrictions it placed on her were required by law, but this was false and MSDW placed restrictions on her that it did not place on male employees also participating in the training program.

12. MSDW took other acts that were discriminatory toward Kaspar on the basis of her sex, including the following;

a. teamed new male financial advisors with experienced senior male financial advisors and groomed them to be rainmakers, something MSDW repeatedly stated to be a prerequisite to success in the firm, but did not team Kaspar with a senior financial advisor despite her requests before, during and after being hired by MSDW and made other female new hires junior members of teams rather than grooming them to be rainmakers;

b. provided sales support to male financial advisors, but did not provide sales support to her;

c. provided marketing support to male financial advisors, but did not provide marketing support to her;

d. distributed lucrative accounts to males, but did not distribute a commensurate quantity of accounts to her;

e. provided positive feedback to male employees in the training program, but not to Kaspar, despite that fact that Kaspar performed better than the males in the training program;

f. criticized Kaspar for her "aggressive" attitude, while taking no action against males who engaged in objectionable, offensive and unprofessional conduct;

g. refused to respond effectively to complaints by Kaspar, regarding unprofessional, offensive and discriminatory conduct toward her by other employees in the office.

13. Kaspar complained repeatedly to MSDW management regarding these and other discriminatory actions against her by MSDW personnel.

14. Despite these complaints, MSDW failed to rectify its discriminatory practices.

15. Instead, MSDW began a campaign to force Kaspar out of the company by repeatedly and without any legitimate basis criticizing her

work efforts and by refusing to support, and indeed by sabotaging, Kaspar's marketing efforts.

16. MSDW also allowed other employees of the office to mock Kaspar for her role as a lead plaintiff in a sex discrimination class action suit against a prior employer by making demeaning comments about her.

17. Just a little more than a month before firing Kaspar MSDW managers called Kaspar into a meeting and accused her of lying on her employment application to MSDW by failing to disclose her role in the sex discrimination suit against her prior employer. In this meeting Kaspar complained again of adverse treatment.

18. Following this accusation, MSDW's discriminatory and retaliatory acts against Kaspar intensified.

19. MSDW management reneged on a previous agreement to provide Kaspar with a better office, which was important to her efforts to solicit significant business for the firm.

20. Kaspar then announced her intention to file a formal complaint with MSDW's human resources department and MSDW management again rejected her concerns and indicated she should quit complaining and just produce.

21. Kaspar was then reprimanded by MSDW for using the company email system for personal business, something the male employees did as a matter of course without suffering any consequences.

22. MSDW continued to subject Kaspar to adverse treatment by, among other things, deliberately delaying approval of marketing materials necessary to Kaspar's efforts to bring in substantial business to the firm and continuing to refuse Kaspar any assistance in her marketing efforts.

23. Kaspar complained about these continuing obstacles to her development of business for MSDW and maintained that she was being subjected to discriminatory conduct by MSDW.

24. MSDW responded by terminating Kaspar's employment, informing her that she was being fired for the "tone" of her email to the branch manager. This reason was pretextual. In fact, MSDW fired Kaspar because of her sex and in retaliation for her complaints of sex discrimination at MSDW and because of the fact that Kaspar had been a named plaintiff in a class action sex discrimination suit against a prior employer in the securities industry, which caused MSDW to fear that Kaspar would target it for a sex discrimination suit.

25. The form U5 Uniform Termination Notice for Securities Industry Registration MSDW completed and filed on Kaspar's termination indicated that she was fired for "interpersonal conduct and interactions with management." The termination after only about eight months of employment and with the reason cited on the U5 effectively doomed Kaspar's efforts to redevelop a career in the financial services industry.

Kaspar sought alternative employment in the industry, but was unable to secure employment and was finally forced to abandon her plans to be a financial advisor, settling instead for less lucrative work in the art industry.

26. MSDW's termination of Kaspar has caused and will continue to cause her substantial financial losses in the form of lost compensation and benefits. The termination also deprived Kaspar of the opportunity to be considered for branch and/or executive management with MSDW.

27. MSDW's discriminatory and retaliatory treatment of Kaspar, including its termination of her employment, has also caused Kaspar to suffer other damages. MSDW's actions toward Kaspar exacerbated and continue to exacerbate physical illnesses suffered by Kaspar and caused and continue to cause Kasper serious emotional distress, embarrassment, humiliation and damage to her professional reputation.

**CLASS ALLEGATIONS**

28. Plaintiff Anne Kaspar seeks to represent a Class consisting of all female financial advisors of MSDW's Individual Investors Division who were employed at any time from September 4, 2003 (300 days before Kaspar filed her employment discrimination charge with EEOC) and the date of filing of this complaint.

29. The Class consists of in excess of a thousand individuals and therefore is so numerous that joinder is impracticable.

30. On information and belief, MSDW's adverse treatment of Kaspar because of her sex is not an isolated example and MSDW maintains throughout its Individual Investment Division discriminatory policies and practices that disadvantage its female employees. These discriminatory policies and practices also raise questions of law common to the Class. The questions of fact and law common to the Class include the following:

a. Whether MSDW established discriminatorily low compensation for female new hires as compared to male new hires;

b. Whether MSDW failed and refused to team female financial advisors with senior experienced male financial advisors and groom them to be rainmakers;

c. Whether MSDW failed and refused to provide sales support to female financial advisors, while providing such support to male financial advisors;

d. Whether MSDW fail and refused to provide marketing support to female financial advisors, while providing such support to male financial advisors;

e. Whether MSDW distributed lucrative accounts disproportionately to male financial advisors;

f. Whether MSDW provided positive feedback and support to male financial advisors, while failing and refusing to provide such feedback and support to female financial advisors;

g. Whether MSDW criticized female financial advisors for being "aggressive" while praising and rewarding male financial advisors for being aggressive;

h. Whether MSDW promoted less qualified male employees into branch and executive management positions over more qualified female employees;

i. Whether MSDW failed and refused to respond to complaints of sex discrimination and instead blamed female financial advisors who complained of sex discrimination of being whiners or overly sensitive.

j. Whether its conduct toward its female financial advisors amounted to sex discrimination in violation of Title VII;

k. Whether its conduct toward its female financial advisors amounted to retaliation in violation of Title VII.

There are, therefore, questions of fact and law common to the Class and these common questions will predominate over any questions affecting only individual Class members.

31. MSDW has acted in a similar discriminatory and retaliatory manner toward the Class and injunctive relief will be appropriate in this case.

32. Kaspar's claims are typical of the Class because she was subjected to instances of discriminatory and retaliatory conduct of the types described in the preceding paragraph and throughout this complaint.

33. Kaspar will fairly and adequately represent and protect the interests of the members of the Class. Kaspar has no claims antagonistic to those of the Class and she has retained competent and experienced counsel. Counsel is committed to the vigorous prosecution of this action.

34. A Class Action is superior to all other available methods for the fair and efficient adjudication of this controversy.

35. The expense and burden of litigation would substantially impair the ability of the Class Members to pursue individual cases in order to initiate their rights. In the absence of a class action, MSDW will be permitted to continue its discriminatory and retaliatory conduct.

36. Class Certification is appropriate pursuant to Rule 23(b)(2) because, as set forth in the Complaint, MSDW has acted on grounds generally applicable to the Plaintiff and the Class, thereby warranting appropriate injunctive relief.

37. Class Certification is also appropriate pursuant to Rule 23(b)(3) because the common issues of fact and law alleged herein are common to the Class and predominate over any questions affecting only individual members, thereby rendering the class action superior to all other available methods for the fair and efficient adjudication of this controversy.

**COUNT I**
**SEX DISCRIMINATION**

38. Kaspar incorporates by reference the allegations in paragraphs 1 – 37.

39. MSDW subjected Kaspar and the Class to adverse treatment during their employment because of their sex, as alleged above.

40. The conduct alleged above violates Title VII of the Civil Rights Act of 1964, as amended, and Kaspar and the Class are entitled to all appropriate relief thereunder, including an injunction, lost wages and benefits, compensatory damages, punitive damages, attorneys' fees and costs and pre- and post-judgment interest.

**COUNT II**
**RETALIATION**

41. Kaspar incorporates by reference the allegations in paragraphs1 – 40.

42. MSDW subjected Kaspar and the Class to retaliatory conduct, as alleged above.

43. The conduct alleged above violates Title VII of the Civil Rights Act of 1964, as amended, and Kaspar and the Class are entitled to all appropriate relief thereunder, including an injunction, lost wages and benefits, compensatory damages, punitive damages, attorneys' fees and costs and pre- and post-judgment interest.

**COUNT III**

**RETALIATORY DISCHARGE**

44. Kaspar incorporates by reference the allegations in paragraphs1 – 43.

45. MSDW terminated Kaspar's employment in retaliation for her complaints of sex discrimination and her prior involvement in a sex discrimination lawsuit against her employer.

46. Kaspar's acts as alleged in the previous paragraph are acts that public policy, as embodied in Title VII of the Civil Rights Act of 1964 and the New Mexico Human Rights Act, would encourage.

47. MSDW is therefore liable to Kaspar for all actual damages flowing from its retaliatory discharge of Kaspar, as well as for punitive damages.

**JURY DEMAND**

Plaintiff and the Class demand a trial by jury.

Respectfully submitted,

**MOODY & WARNER, P.C.**

By: ______________________
Christopher M. Moody
4169 Montgomery Blvd. NE
Albuquerque, New Mexico 87109
(505) 944-0033
**ATTORNEYS FOR PLAINTIFF**